IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF MARYLAND

ESTATE OF ANTHONY ANDERSON,    :
SR., et al.,
                               :
     Plaintiffs,
                               :
v.                                  Civil Action No. GLR-13-3167
                               :
TODD STROHMAN, et al.,
                               :
     Defendants.
                               :

                      **MEMORANDUM OPINION**

     Pending before the Court are Defendant Mayor and City Council of Baltimore's (the "City") and Defendant Baltimore City Police Department's[1] ("BPD") respective Motions to Dismiss. (ECF Nos. 9, 15). Plaintiffs, the Estate of Anthony Anderson, Sr., and seven surviving immediate family members,[2] are suing Officers Todd Strohman, Michael Vodarick, and Greg Boyd (collectively, the "Officers"), the City, and the BPD, for civil and constitutional violations stemming from the violent death of Anthony Anderson, Sr., while in police custody.

     This case presents two prevailing threshold issues. The first is whether the BPD may assert sovereign immunity to shield itself from Plaintiffs' state law actions. The second is one

---

[1] The BPD notes its proper name is Baltimore Police Department.

[2] The family-member Plaintiffs include Anderson's mother, Edith Fletcher; father, Leon Anderson; three sons, Anthony Anderson, Jr., Marcus Pettiford, and Terrence Manocky; and two daughters, Yvonne and Jean Anderson.

often visited but recently muddled by this Court: whether the City sufficiently controls the BDP to be subject to § 1983 liability for constitutional violations by Baltimore police officers.

Having reviewed the pleadings and supporting documents, the Court finds no hearing necessary. <u>See</u> Local Rule 105.6 (D.Md. 2011). For the reasons outlined below, the Motions will be granted.

## I.  BACKGROUND[3]

Anderson was returning home from a local corner store on September 21, 2012, when Officer Strohman approached him from behind in a vacant lot, lifted Anderson from his knees, and threw him to the ground head and neck first. Officer Strohman handcuffed Anderson while he lay on the ground. Moments later, Officers Vodarik and Boyd approached. The three officers proceeded to kick Anderson repeatedly in his ribs, stomach, back, and chest, causing him significant injuries from which he later died.

On October 24, 2013, Plaintiffs filed this survival and wrongful death action in this Court against the three officers, the City, and the BPD. Their eighty-six-page Complaint alleges forty causes of action, including twenty-eight counts against

---

[3] Unless otherwise noted, the following facts are stated as alleged in the Complaint. (ECF No. 1).

the three officers for violating Articles 24 and 26 of the Maryland Declaration of Rights, claims for constitutional violations asserted under § 1983, and claims for battery. The remaining twelve counts allege the BPD is liable because it inadequately trained, supervised, and disciplined the three officers. They also allege the BPD maintains a policy of using excessive force during criminal investigations. Despite listing the City as a defendant, the Complaint contains no substantive cause of action against it.

The City moved to dismiss the Complaint against it on November 22, 2013. (ECF No. 9). On December 3, 2013, the BPD moved to dismiss all but the two counts against it asserting § 1983 claims. (ECF No. 15). Although Plaintiffs filed a joint response to the Motions (ECF No. 19), only the City filed a reply. (ECF No. 20). Nevertheless, the Motions are ripe for review.

## II. DISCUSSION

A. **Standard of Review**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion, the complaint must allege enough facts to state a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible when "the plaintiff pleads

3

factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. Id. (citing Twombly, 550 U.S. at 555).

Thus, the Court "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)) (internal quotation marks omitted). And in doing so, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**B. Analysis**

**1. State Law Claims Against the BPD**

Plaintiffs bring ten pendant state law claims against the BPD, alleging it caused the unconstitutional actions of the three officers through inadequate training and the practice of

4

condoning inappropriate law enforcement behavior.[4] In seeking to dismiss these claims, the BPD argues it has sovereign immunity as a state agency. Plaintiffs respond that the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. §§ 5-301 et seq. (West 2014), bars the BPD from asserting sovereign immunity, thus making it liable for tortious acts committed by Baltimore police officers. In advancing this argument, Plaintiffs make two presumptions. First, they presume the LGTCA allows the BPD to be held vicariously liable for the conduct of Baltimore police officers. Second, they presume the LGTCA bars the BPD from asserting sovereign immunity to avoid that liability. Neither of these presumptions are correct.

State sovereign immunity bars individuals from maintaining an action against the State of Maryland or one of its agencies unless the immunity is waived. Balt. Police Dep't v. Cherkes, 780 A.2d 410, 424 (Md.Ct.Spec.App. 2001) (citing Catterton v. Coale, 579 A.2d 781, 785 (Md.Ct.Spec.App. 1990)). In addition, it shields the State and state agencies from actions seeking damages for state constitutional violations and protects them from respondeat superior liability for torts committed by their employees. Cherkes, 780 A.2d at 423–24.

---

[4] The specific state law claims against the BPD are found in Counts IV, VIII, XII, XVI, XX, XXIV, XXVIII, XXXII, XXXVIII, and XL, which the Complaint erroneously denotes as "XXXX."

Contrary to commonly held belief, the BPD has long been considered a state agency with sovereign immunity to state law claims. See Mayor & City Council of Balt. v. Clark, 944 A.2d 1122, 1128–30 (Md. 2008) (outlining the BPD's history as a state agency); Clea v. Mayor & City Council of Balt., 541 A.2d 1303, 1306 (Md. 1988) ("[T]he Baltimore City Police Department is a state agency."), superseded by statute, Md. Code Ann., State Gov't § 12-101(a) (West 2014), as recognized in D'Aoust v. Diamond, 36 A.3d 941 (Md. 2012); Cherkes, 780 A.2d at 428 (concluding the BPD may assert sovereign immunity as a state agency).

This analysis, however, changes slightly for local governments. Years ago, amid a dramatic increase in tort litigation, the Maryland General Assembly enacted the LGTCA to limit the civil liability of local governments and their employees. Cherkes, 780 A.2d at 430; see also Md. Code Ann., Cts. & Jud. Proc. § 5-303(a)(1) (limiting the damages recoverable against local government agencies). Labeled among the "local governments" it safeguards is "[t]he Baltimore City Police Department." Md. Code Ann., Cts. & Jud. Proc. § 5-301(d)(21). But the LGTCA's application to the BPD extends only so far. The General Assembly merely included the BPD as a local government under the LGTCA to extend its protection to Baltimore

police officers, who were otherwise not shielded by the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12-101 et seq. (West 2014). Cherkes, 780 A.2d at 433–34.

With that purpose in mind, the LGTCA imposes on the BPD the duty to pay judgments entered against its employees, namely, Baltimore police officers, and waives the BPD's sovereign immunity to the extent it conflicts with that responsibility:

> (1) [A] local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.
>
> (2) A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection.

Md. Code Ann., Cts. & Jud. Proc. § 5-303(b).

The LGTCA preserves, however, the defenses and immunities the BPD otherwise has at common law:

> (d) [T]his subtitle does not waive any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by an employee of a local government.
>
> (e) A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised . . . .

Id. § 5-303.

Put simply, the LGTCA only prohibits the BPD from asserting sovereign immunity to avoid its statutorily-imposed

7

duty to defend or indemnify its employees. Cherkes, 780 A.2d at 434. It requires the BPD to pay any judgment, in whole or in part, this Court may render against Officers Strohman, Vodarick, and Boyd. But the BPD cannot be vicariously liable and may still raise sovereign immunity in its own defense. See id. at 436. Even under the LGTCA, Plaintiffs cannot bring state law claims directly against the BPD for the actions of Baltimore police officers acting within the scope of their employment. In that regard, Plaintiffs bring precisely the type of claim sovereign immunity protects the BPD against. The BPD may assert sovereign immunity here, and the Court will dismiss with prejudice the ten state law claims against it.

**2. Possible State Law and § 1983 Claims Against the City**

As a result of an admitted technical error in their Complaint, Plaintiffs bring no claim against the City. Chiefly for that reason, the City moves to dismiss the Complaint against it. Indeed, the Complaint literally fails to state a claim against the City upon which relief may be granted. The Court may dismiss it on those grounds alone.

But the City goes one step further. It asks the Court to dismiss the Complaint with prejudice because it lacks sufficient control over the BPD to be liable under state law or § 1983 for the conduct of Baltimore police officers. Plaintiffs disagree.

8

Relying on four of this Court's decisions, they argue the City has sufficient control over the BPD's everyday affairs to be liable under § 1983 for Baltimore police officer conduct. See Humbert v. O'Malley, No. WDQ-11-0440, 2011 WL 6019689 (D.Md. Nov. 29, 2011); Brown v. Tshamba, No. RDB 11-00609, 2011 WL 2935037 (D.Md. July 18, 2011); Mason v. Mayor & City Council of Balt., No. HAR 95-41, 1995 WL 168037 (D.Md. Mar. 24, 1995); Wilcher v. Curley, 519 F.Supp. 1 (D.Md. 1980). Plaintiffs do not address the City's state law contentions. In any event, the Court agrees with the City.

Plaintiffs' possible state law claims against the City can be dispensed with quickly. As previously discussed, under Maryland law, the BPD is a state agency.[5] Clark, 944 A.2d at 1131; Cherkes, 780 A.2d at 428; Clea, 541 A.2d at 1306. As a result, the City does not employ Baltimore police officers and is not liable for their conduct under state law. Clea, 541 A.2d at 1306. For those reasons, Plaintiffs can bring no cognizable state law claim against the City here.

The possible § 1983 claims, however, require more attention. Section 1983 allows individuals to sue any person who violates their constitutional rights while acting under the

---

[5] Because many earlier cases discuss the unique relationship between the City and BPD at length, the Court will not belabor the point here. For a more detailed discussion, see Clark, 944 A.2d at 1128-31.

color of law. 42 U.S.C. § 1983 (2012). Originally, local governments were not considered a "person," and thus could not be sued under § 1983. The Supreme Court of the United States changed this interpretation in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978). Monell made it possible to sue local governments under § 1983, but only if the constitutional violations occurred while executing a local government policy or custom. Id. at 690. In other words, Monell allows plaintiffs to sue the City under § 1983 for the unconstitutional conduct of its employees.

The threshold question then becomes whether Baltimore police officers are City employees. The answer can be quite confusing. On the one hand, this Court has repeatedly concluded the City does not sufficiently control the BPD to be responsible for Baltimore police officer conduct under § 1983 (i.e., they are not City employees). See, e.g., Creasy v. Mayor of Balt., No. JFM-11-1870, 2012 WL 1044426, at *2 (D.Md. Mar. 26, 2012) ("[T]he Baltimore City Police Department is an agency of the State, not an agency of the City of Baltimore and thus not within the control of the Mayor."); Brown v. Balt. Police Dep't, No. RDB-11-00136, 2011 WL 6415366, at *6 (D.Md. Dec. 21, 2011) ("BPD officers are not City employees and the City does not exercise control over the BPD and its employees."); Chin v. City

of Balt., 241 F.Supp.2d 546, 549 (D.Md. 2003) ("[T]he Baltimore City government does not wield enough control over the Baltimore Police Department to be subject to liability for the Baltimore Police Department's actions."); Carter v. Mayor & City Council of Balt., 164 F.Supp.2d 509, 517 (D.Md. 2001) ("It is well established that Baltimore City cannot be regarded as the employer of members of the Baltimore City Police Department." (citing Clea, 541 A.2d at 1306)), vacated on other grounds sub nom. Carter v. Balt. Cnty., Md., 39 F.App'x 930 (4th Cir. 2002).

On the other hand, the cases upon which Plaintiffs rely, Wilcher, Mason, Tshamba, and Humbert, apparently hold the exact opposite – that the City has sufficient practical links with the BPD to be liable for Baltimore police officer conduct under § 1983 (i.e., they are City employees).[6]

The genesis of the confusion seems to be the Wilcher line of cases, which disregarded the threshold question altogether and jumped immediately into the Eleventh Amendment analysis.[7]

---

[6] The Court of Appeals for the Fourth Circuit briefly discussed whether the City sufficiently controls the BPD for § 1983 purposes in Wiley v. Mayor and City Council of Baltimore, 48 F.3d 773 (4th Cir. 1995), but declined to address the issue on its merits. Id. at 776. For the purposes of that case, the court instead assumed the City could be liable under § 1983 for BPD policies. Id.

[7] Understandably, it is easy to confuse the § 1983 municipal liability question with the Eleventh Amendment analysis. The Eleventh Amendment analysis, which considers the degree of control the government has over a certain entity, is nearly

Wilcher specifically concerned whether the City and BPD are so connected as to bar the BPD from asserting the Eleventh Amendment to avoid liability under § 1983. The Court concluded the City and BPD were sufficiently connected, and thus the BPD could not assert the Eleventh Amendment. Wilcher, 519 F.Supp. at 4-5. The Court reaffirmed this conclusion two years later in Hector v. Weglein, 558 F.Supp. 194 (D.Md. 1982), where it concluded again that the City and BPD are too connected to escape § 1983 liability by invoking the Eleventh Amendment. Id. at 199.

But the Court in neither case, despite having the opportunity to do so, addressed whether the City is generally liable for Baltimore police conduct as a threshold matter. The City argued in both cases that it cannot be liable under § 1983 because it did not employ Baltimore police officers. The Wilcher Court quickly dispensed with that argument in a footnote. See Wilcher, 519 F.Supp. at 2 & n.5. While in Hector, the Court ignored it altogether and proceeded to rule as if the City attempted to assert Eleventh Amendment immunity. See Hector, 558 F.Supp. at 197, 199.

Even then, the Court in both cases poked holes in its own analysis. In Wilcher, the Court, upon reconsideration and with

---

identical to that of § 1983. See Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 248 n.5 (4th Cir. 2012).

new evidence in tow detailing the relationship between the City and BPD, ultimately acknowledged the City exercised only limited control over the BPD and no control whatsoever over the actions of Baltimore police officers. Wilcher, 519 F.Supp. at 9. Similarly, the Court in Hector granted summary judgment in the City's favor after noting that no City official is responsible for training or disciplining Baltimore police officers, and that BPD officials have "very infrequent contact" with the City. Hector, 558 F.Supp. at 202. These conclusions suggest the Eleventh Amendment analysis employed in these cases is not as air-tight as it seems.

Nonetheless, Mason, Tshamba, and Humbert relied on Wilcher and Hector to conclude the City sufficiently controlled the BPD and could be liable under § 1983 for Baltimore police officer conduct. See Humbert, 2011 WL 6019689, at *5 (denying the City's motion to dismiss the § 1983 claims against it because of the "strong practical links" between it and the BPD); Tshamba, 2011 WL 2935037, at *7 ("[The City is] precluded from asserting state sovereign immunity and [is] amendable to a § 1983 action."); Mason, 1995 WL 168037, at *4 ("[T]he City maintains sufficient practical knowledge of and control over the Police Department to withstand dismissal of this § 1983 action."). And in doing so, those cases merged the analysis as to whether the

13

City could be liable for Baltimore police officer conduct under § 1983 with <u>Wilcher</u> and <u>Hector</u>'s already shaky Eleventh Amendment analysis. <u>Bradley v. Balt. Police Dep't</u>, 887 F.Supp.2d 642, 648 n.4 (D.Md. 2012). The Court will decline to follow <u>Mason</u>, <u>Tshamba</u>, and <u>Humbert</u> here.

Try as they may, Plaintiffs cannot avoid the mountain of law insisting the City does not sufficiently control the BPD or Baltimore police officers. Neither can this Court. Baltimore police officers are state employees free from the City's supervision and control. The City sets no policy or custom that Baltimore police officers execute, and the City cannot be liable for the conduct of Officers Strohman, Vodarick, and Boyd under § 1983.

The Court concludes, based on governing Maryland and federal law, that a § 1983 claim cannot be brought against the City for Baltimore police officer conduct because it does not sufficiently control the BPD and cannot be considered to employ Baltimore police officers. Municipal liability under <u>Monell</u> cannot attach to the City for the unconstitutional actions of Baltimore police officers. Accordingly, the Court will dismiss the Complaint against the City with prejudice.

### 3. Leave to Amend

Plaintiffs request leave to amend the Complaint "to cure their technical pleading irregularities against the City." (See Pls.' Joint Opp'n Balt. City Police Dep'ts & Mayor & City Council's Respective Mots. Dismiss at 2, ECF No. 19-1). Because the City cannot be liable for the alleged offenses, and Plaintiffs offer no specific factual allegations that would cure that defect, the Court will deny Plaintiffs' request. See Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006).

### III. CONCLUSION

For the foregoing reasons, the Court will, by separate Order, grant the City and BPD's respective Motions to Dismiss (ECF Nos. 9, 15) and deny Plaintiffs' request for leave to amend the Complaint (see ECF No. 19).

Entered this 19th day of March, 2014

/s/
_____
George L. Russell, III
United States District Judge