IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ESTATE OF ANTHONY ANDERSON, JR., ET AL. | * |
| | * |
|    Plaintiffs, | |
| | * |
| v. | Civil Case No: 1:13-cv-03167-GLR |
| | * |
| TODD STROHMAN, ET AL. ET AL. | |
| | * |
|    Defendants | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GREGG BOYD'S
MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS**

Defendant Detective Gregg Boyd ("Det. Boyd"), by his undersigned counsel submits this Memorandum of Law in Support of his Motion for Summary Judgment on All Claims.

**I.   INTRODUCTION AND SUMMARY**

Plaintiffs are the estate and wrongful death beneficiaries of Anthony Anderson, Sr. ("Mr. Anderson"). On October 24, 2013, Plaintiffs filed this case against three Baltimore police officers, including Det. Boyd, whose actions, Plaintiffs contend, contributed to the death of Mr. Anderson on September 21, 2012.[1] Specifically, Plaintiffs allege that one of the involved officers, Det. Strohman, used excessive force, namely a take-down maneuver, to seize Mr.

---

[1] The other two officer defendants are Detective Todd Strohman ("Det. Strohman") and Detective Michael Vodarick ("Det. Vodarick"). Plaintiffs also sued the City of Baltimore, which was dismissed by the Court on the City's Motion, and the Baltimore Police Department ("BPD"), against which Plaintiffs' claims have been bifurcated.

Anderson, *see* Compl. ¶¶ 14, 15, and that Mr. Anderson was kicked while he was in custody, *see id.* at ¶ 17.[2] The record does not support these allegations against Det. Boyd.

As to Det. Boyd, Plaintiffs assert 12 causes of action: a survival claim by Mr. Anderson's estate based on the alleged violation of Mr. Anderson's rights under Articles 24 and 26 of the Maryland Declaration of Rights (Count III); seven wrongful death claims by Mr. Anderson's beneficiaries under Maryland's wrongful death statute[3] (a separate count for each wrongful death plaintiff) based on the alleged violation of Mr. Anderson's rights under Articles 24 and 26 of the Maryland Declaration of Rights (Counts VII, XI, XV, XIX, XXII, XXVII, XXXI); a survival claim by Mr. Anderson's estate under 42 U.S.C. § 1983 ("Section 1983") based on the alleged violation of Mr. Anderson's rights under the U.S. Constitution (Count XXXIII); a wrongful death claim (with all of Mr. Anderson's beneficiaries under Maryland's wrongful death statute joining) under Section 1983 based on the alleged violation of Mr. Anderson's rights under the U.S. Constitution (Count XXXV); a wrongful death claim (with all of Mr. Anderson's beneficiaries under Maryland's wrongful death statute joining) alleging battery (Count XXXVII); and a survival claim by Mr. Anderson's estate alleging battery (Count XXXIX). Thus, the causes of action against Det. Boyd fall under three headings: Articles 24 and 26 of the Maryland Declaration of Rights; Section 1983; and battery.

---

[2] Plaintiffs do not assert any claims challenging the lawfulness of Det. Strohman's decision to stop Mr. Anderson, focusing their claims only on the degree of force used by Strohman to effectuate the seizure and the alleged force used on Mr. Anderson while he was in custody. *See generally* Compl.; *see also* Deposition of Todd A. Strohman, December 10, 2014 ("Det. Strohman Dep."), attached as **Exhibit A**, admission by Plaintiffs' counsel, at 65 ("I'm not questioning the stop. I'm questioning the force. . . . Now, does he have the right to stop him? Of course he does, but what becomes an issue is the force that's used to stop . . . ."). Even if Plaintiffs were challenging the lawfulness of the seizure, the Complaint does not allege Det. Boyd effectuated the seizure.

[3] MD. CODE ANN., CTS. & JUD. PROCS., §§ 3-901 *et seq.*

This Motion is ripe for disposition because Det. Boyd has raised the defense of qualified immunity, which protects him from suit, as well as liability, on Plaintiffs' Section 1983 claims. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (recognizing that, because qualified immunity protects officers from suit as well as liability, immunity questions should be resolved as early as possible in the litigation). Additionally, the existing record demonstrates Det. Boyd's entitlement to summary judgment on all of Plaintiffs' claims. First, Plaintiffs' Complaint acknowledges that Det. Strohman—not Det. Boyd—effectuated the take-down of Mr. Anderson. *See* Compl. at ¶¶ 14, 15. Thus, Det. Boyd is entitled to summary judgment on Plaintiffs' claims to the extent the claims are based on alleged excessive force during the seizure of Mr. Anderson. Second, Det. Boyd did not kick Mr. Anderson. Two Plaintiffs, who claim to have witnessed the events underlying this lawsuit, admitted that only one officer kicked Mr. Anderson while he was in custody—not all three as they alleged in their Complaint—and there is no evidence that Det. Boyd kicked Mr. Anderson. Thus, Det. Boyd also is entitled to summary judgment on Plaintiffs' claims to the extent the claims are based on alleged use of force while Mr. Anderson was in custody.

## II.     FACTS[4]

On September 21, 2012, Dets. Strohman, Vodarick, and Boyd were in an unmarked police vehicle, patrolling a high-crime area near Biddle and Montford Streets in East Baltimore; Det. Boyd was the driver. *See* Deposition of Gregg Boyd, December 10, 2014 ("Det. Boyd Dep."), attached as **Exhibit B**, at 11, 13, 36. Outside of a liquor store well-known for drug activity, they observed an individual, later known to be Mr. Anderson, engaged in what they

---

[4] Det. Boyd, as he must, endeavors to set forth the evidence in the light most favorable to Plaintiffs.

believed to be a controlled dangerous substance ("CDS") transaction in which Mr. Anderson was the seller. *Id.* at 14-15, 17, 22-23; *see also* Det. Strohman Dep. at 19-21, 59-60, 63.  When Mr. Anderson observed the officers, he separated from the other individual and walked away; accordingly, Det. Strohman told Mr. Anderson to "stop" and identified himself as a police officer.[5]  *See* Det. Boyd Dep. at 25; Det. Strohman Dep. at 50.  Mr. Anderson ignored Det. Strohman and continued walking away, quickening his pace.  *See* Det. Boyd Dep. at 26-27; Det. Strohman Dep. at 50.

Dets. Boyd and Strohman testified that Det. Strohman exited the unmarked vehicle and again told Mr. Anderson to "stop"; Mr. Anderson turned around to look at Det. Strohman, then turned back around and, while continuing to walk away at a brisk pace, pulled a baggie from his pocket and started ingesting what the officers believed to be gel caps of narcotics.  *See* Det. Boyd Dep. at 25-27; Det. Strohman Dep. at 44, 53-55.  Thus, to prevent Mr. Anderson from destroying evidence and potentially overdosing himself, Det. Strohman "came up from behind him . . . [and] kind of bearhugged him from behind over top of his arms to prevent him from ingesting the drugs."  *See* Det. Strohman Dep. at 44; *see also* Det. Boyd Dep. at 28-29 ("[Det. Strohman] grabbed [Mr. Anderson] in a bearhug pinning his arms to his body so that he could not reach his mouth anymore.").  According to Det. Strohman, Mr. Anderson "briefly struggled by widening his stance," so Det. Strohman "leaned back to get him off balance, and [they] both fell to the side."  *See* Det. Strohman Dep. at 44.  Mr. Anderson could not brace his fall because his hands were pinned to his side.  *See id.* at 105.  Det. Strohman then hand-cuffed Mr. Anderson and sat him upright.  *See Id.* at 56, 71.

---

[5] *See supra* note 2.

When Det. Strohman seized Mr. Anderson, Det. Boyd was still in the officers' unmarked vehicle.  *See* Det. Boyd Dep. at 31.  Once Mr. Anderson was in custody, Det. Boyd exited the vehicle and joined Dets. Strohman and Vodarick with Mr. Anderson.  *See* Det. Boyd Dep. at 38.  Mr. Anderson stated that he had spit out the drugs, and Det. Boyd recovered the baggie and three gel caps containing suspected CDS, along with a broken gel cap.[6]  *See* Det. Strohman Dep. at 76-77; Det. Boyd Dep. at 33, 38-39.  Mr. Anderson was seated upright independently, but after about three to four minutes, he started to lose consciousness.  *See* Det. Boyd Dep. at 33, 34.  Before losing consciousness, however, Det. Boyd called for an ambulance because Mr. Anderson began to look unwell; his breathing was shallow and quick, and he had a "blank stare on his face."  *See id.* at 50, 51.  About two minutes later, Det. Boyd again called for an ambulance.  *See id.* at 51.  EMTs arrived shortly thereafter and transported Mr. Anderson to Johns Hopkins Hospital, which unfortunately was unable to save his life.  At no time did Det. Boyd kick Mr. Anderson or put his foot on Mr. Anderson in any way.  *Id.* at 55.

Mr. Anderson's mother, Edith Fletcher, and children, Yvonne Anderson and Anthony Anderson, Jr.—all Plaintiffs in this action—claim to have witnessed the events underlying this lawsuit.  They maintain that Mr. Anderson was kicked while he was in custody; however, Yvonne Anderson and Anthony Anderson, Jr. admitted that <u>only one</u> officer kicked him:

> Q:  Okay.  How many people kicked your father?
>
> A:  One.

---

[6] Subsequent DNA testing of the plastic baggie yielded only a single source DNA profile from an unidentified male; however, the testing of the DNA on the empty gel cap concluded that "[Mr.] Anderson is the source of the major DNA profile from the swabs from the empty gel cap."  *See* DNA Analysis Report, October 12, 2012, attached as **Exhibit C**.

Transcript of Videotaped Statement of Yvonne Anderson, October 19, 2012 ("Y. Anderson Video Tr."), attached as **Exhibit D**, at 18.[7]

      Q:  Which -- how many officers were doing the kicking?

      A:  One.

Transcript of Videotaped Statement of Anthony Anderson, Jr., October 19, 2012 ("A. Anderson, Jr. Video Tr."), attached as **Exhibit G**, at 33.[8]

Furthermore, Yvonne Anderson admitted that one of the officers was "over by the car." *See* Y. Anderson Video Tr. at 14-15. She also admitted that the officer she claims kicked Mr. Anderson only kicked him one time, in the leg[9]; and she could not be sure that the kick "was the

---

[7] Transcripts of the Videotaped Statements, as well as an earlier recorded statement by Yvonne Anderson, cited herein are true and accurate transcriptions of BPD records, namely the recorded statements by Plaintiffs, that BPD produced in discovery. On or about October 30, 2014, BPD served the other parties with its Response to Plaintiffs' First Request for Production of Documents, attached as **Exhibit E**. BPD's accompanying production of records included video and audio statements by Plaintiffs and witnesses, including the statements of Yvonne Anderson and Anthony Anderson, Jr. relied on in this Motion. A copy of BPD's Certificate of Records of Regular Conducted Business Activity for the statements is attached as **Exhibit F**. For purposes of briefing this Motion, undersigned counsel for Det. Boyd had the statements transcribed by a court reporter. Each transcription includes a certification by the court reporter that the transcription is a true and accurate transcription of the recorded statement. Plaintiffs' Videotaped Statements are admissions by party-opponents and, therefore, admissible under Federal Rule of Evidence 801(d)(2).

[8] At her December 19, 2014 deposition in this case, Yvonne Anderson reiterated her admission that only one officer kicked Mr. Anderson. *See* Deposition of Yvonne Anderson, December 19, 2014 ("Y. Anderson Dep."), attached as **Exhibit H**, at 33-34. Anthony Anderson, Jr., however, flatly contradicted himself at his December 19, 2014 deposition—which took place more than two years after his Videotaped Statement—by stating that all three officers kicked Mr. Anderson. *See* Deposition of Anthony Anderson, Jr., December 19, 2014 ("A. Anderson, Jr. Dep."), attached as **Exhibit I**, at 24-25. Anthony Anderson, Jr.'s revised version of events does not generate a triable issue of fact. "[A] party may not defeat summary judgment by disputing its own evidence." *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 972 F. Supp. 2d 748, 771 (D. Md. 2013); *see also Stevenson v. City of Seat Pleasant*, No. RWT 09cv1791, 2011 U.S. Dist. LEXIS 53655, 2011 WL 1899238, at *2 ("Because the only issue of fact regarding Defendant Adey's role as an attacker is to determine which of Mr. Barnett's conflicting versions of fact is correct, there is not a genuine dispute sufficient to survive summary judgment.").

[9] In an earlier interview on the night Mr. Anderson died, Yvonne Anderson told investigators that Mr. Anderson was kicked in the stomach, but, in her Videotaped Statement, she said he was kicked in the leg. Regardless of where Plaintiffs maintain Mr. Anderson was kicked, Det. Boyd is still entitled to summary

type of kick that was designed to hurt [Mr. Anderson]." *Id.* at 18-19, 20-21; *see also* Transcript of Police Interview of Yvonne Anderson, September 21, 2012 ("Y. Anderson Interview Tr."), attached as **Exhibit J**, at 16 (admitting that Mr. Anderson was kicked "[o]nce"). Yvonne Anderson also admitted that the officers were wearing police vests with the word "police" on them and that their badges were exposed. Y. Anderson Interview Tr. at 17-18.at 17-18.

Putting aside, solely for purposes of this Motion, Defendants' position that Mr. Anderson was not kicked while in custody, Plaintiffs cannot dispute Det. Boyd's testimony that he did not kick Mr. Anderson. Furthermore, the record affirmatively demonstrates that Det. Vodarick—not Det. Boyd—is the officer Plaintiffs contend kicked Mr. Anderson. Indeed, Det. Strohman testified that, at one point, Det. Vodarick tapped Mr. Anderson with his foot, "as in like if I were to tap like this to say, 'Hey, are you okay.'" *See* Det. Strohman Dep. at 83. While not necessary to the resolution of this Motion, several independent eyewitnesses (not Plaintiffs), as well as Det. Strohman, described Det. Vodarick's physical contact with Mr. Anderson as a tap with his foot, not a kick. Regardless, Det. Boyd is not responsible or liable for any physical contact Det. Vodarick may have had with Mr. Anderson while Mr. Anderson was in custody. Any dispute of fact about the nature of Det. Vodarick's physical contact with Mr. Anderson does not affect Det. Boyd's Motion for Summary Judgment.

The only allegations of excessive force are Det. Strohman's take-down and the subsequent kicking that allegedly occurred while Mr. Anderson was in custody. *See generally*

---

judgment because he did not kick Mr. Anderson, and there is no evidence from which a reasonable jury could conclude otherwise.

Compl. ¶¶ 14-19 (setting forth the operative allegations of fact).[10]  Det. Boyd is not liable for either allegation.

### III. SUMMARY JUDGMENT STANDARD

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  Then, the burden shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324.  In satisfying the initial burden, the moving party need not "support its motion with . . . materials <u>negating</u> the opponent's claim." *Id.* at 323 (emphasis in original).  The Court should view the evidence in the light most favorable to the non-movant and draw all reasonable inferences from the evidence in the non-movant's favor; however, for the non-moving party to avoid summary judgment, the evidence cited by the non-moving party must be "such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

Plaintiffs cannot manufacture a dispute of material fact by impeaching each other or disputing their own versions of events: "'A genuine issue of material fact is not created where the only issue of fact is to determine which of the [] conflicting versions of the plaintiff's testimony is correct.'" *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 198 (4th Cir. 1997) (quoting *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984)).  "[A] party may not defeat summary judgment by disputing its own evidence." *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 972

---

[10] Yvonne Anderson said that an officer used his knee to help sit Mr. Anderson upright by putting his knee in Mr. Anderson's back; however, she admitted that the officer was not "hurting [Mr. Anderson] with the knee," but rather was "holding [Mr. Anderson] up with it." *See* Y. Anderson Videotaped Statement Tr., at 22.  In any event, Plaintiffs' Complaint does not make any allegations of excessive force based on an officer using his knee to brace Mr. Anderson (or do anything to Mr. Anderson), and, even if it did, there is no evidence that Det. Boyd had any physical contact with Mr. Anderson.

F. Supp. 2d 748, 771 (D. Md. 2013). Additionally, the non-moving party is not permitted to "create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

IV. ARGUMENT

    A. **Det. Boyd Is Entitled to Summary Judgment on Plaintiffs' Section 1983 Claims.**

        *1.   Controlling legal principles.*

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred," such as the Fourth Amendment's prohibition against unreasonable seizure or the Fourteenth Amendment's Due Process Clause. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Plaintiffs' Section 1983 claims based on Det. Strohman's use of force to seize Mr. Anderson's are separate and distinct from any Section 1983 claims based on alleged force used on Mr. Anderson once he was in custody. Thus, the legal standard governing Det. Strohman's take down of Mr. Anderson is different than the standard governing any alleged use of force occurring after Det. Strohman effectuated the seizure of Mr. Anderson.

The Fourth Amendment's reasonableness standard "'governs claims of excessive force during the course of an arrest, investigatory stop, or other 'seizure' of a person.'" *Robles v. Prince Georges County*, 302 F.3d 262, 268 (4th Cir. 2002) (quoting *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997)). Thus, to prevail on claims based on alleged excessive force used to effectuate a seizure, such as Det. Strohman's take down of Mr. Anderson, a plaintiff must prove, at a minimum, that the force used by the officer was objectively unreasonable under the circumstances. *See id.*; *Graham v. Connor*, 490 U.S. 386, 396-97 (1989).

9

The Fourth Circuit, however, "has rejected any concept of a continuing seizure rule." *Robles*, 302 F.3d at 268. Thus, "once the single act of detaining an individual has been accomplished, the [Fourth] Amendment [reasonableness standard] ceases to apply."[11]  *Id.* Claims regarding an officer's subsequent use of force are governed by the Fourteenth Amendment's Due Process Clause. *Id.* To prevail on claims based on alleged excessive force while in custody, a plaintiff must show, at a minimum, that the officer's actions were motivated by "an actual intent to punish" or were "'arbitrary and purposeless.'" *Id.* at 269 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

Additionally, regardless what legal standard applies—Fourth Amendment objective reasonableness or Due Process Clause subjective intent—the defense of qualified immunity applies to Section 1983 claims. Qualified immunity protects, from suit and liability, "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Thus, an officer can be sued and found liable under Section 1983, only for "transgressing bright lines"; an officer is not liable for "bad guesses in gray areas." *Mariariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992).

Here, Det. Boyd is not liable for Section 1983 claims based Det. Strohman's use of force to seize Mr. Anderson, or for claims based on custodial use of force after the seizure was effectuated, as Det. Boyd did not commit any of the alleged tortious acts against Mr. Anderson. Det. Boyd did not seize Mr. Anderson, nor did he kick him. Additionally, Det. Boyd is entitled to qualified immunity for any claims under Section 1983.

---

[11] The "seizure" of an individual takes place when "by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544 (1980). "A seizure is a single act, not a continuous fact." *California v. Hodari D.*, 499 U.S. 621, 625 (1991). Plaintiffs concede that Mr. Anderson was in custody at the time he was allegedly kicked. *See* Compl. ¶ 17.

> 2. *Det. Boyd is entitled to summary Judgment on claims of excessive force during Mr. Anderson's seizure.*

Det. Boyd is entitled to summary judgment on Plaintiffs' Section 1983 claims based on the alleged excessiveness of the force that Det. Strohman used to seize Mr. Anderson. Plaintiffs' Complaint acknowledges that Det. Strohman—not Det. Boyd—effectuated the take-down of Mr. Anderson. *See* Compl. at ¶¶ 14, 15. This alone entitles Det. Boyd to summary judgment on any claims based on excessive force during the seizure. Additionally, when Det. Strohman put Mr. Anderson in a bearhug and took him to the ground, Det. Boyd was still in the officers' unmarked vehicle. *See* Det. Boyd Dep. at 31. Mr. Anderson was already in custody before Det. Boyd exited the vehicle and joined Dets. Strohman and Vodarick with Mr. Anderson. *See* Det. Boyd Dep. at 38.

Accordingly, Det. Boyd is entitled to Summary Judgment on Plaintiffs' Section 1983 claims against him (Counts XXXIII and XXXV) to the extent the claims are based on the alleged excessiveness of the force used to seize Mr. Anderson.

> 3. *Det. Boyd is entitled to summary judgment on claims of excessive force occurring while Mr. Anderson was in custody.*

Plaintiffs' claims of in-custody excessive force are based on an allegation that Mr. Anderson was kicked. *See* Compl. at ¶ 17. Det. Boyd, however, is entitled to summary judgment on Plaintiffs' Section 1983 claims based on any in-custody excessive force because he did not kick Mr. Anderson, or even put his foot on Mr. Anderson in any way. *See* Det. Boyd Dep. at 55. Plaintiffs cannot dispute this. In fact, Plaintiffs Yvonne Anderson and Anthony Anderson, Jr. admitted that only one officer kicked Mr. Anderson. *See Fernandes v. Montgomery County*, No. AW-10-cv-752, 2012 U.S. Dist. LEXIS 65639, 2012 WL 1664086, at

11

*3 (D. Md. May 10, 2012) ("The Court cannot impute liability on [an officer] when Plaintiff simply speculates that [the officer] is one of the individuals who kicked and punched him."). Plaintiffs cannot manufacture a factual dispute by contradicting themselves or impeaching each other.  *Beyond Sys., Inc.*, 972 F. Supp. 2d at 771 ("[A] party may not defeat summary judgment by disputing its own evidence."); *Stevenson v. City of Seat Pleasant*, No. RWT 09cv1791, 2011 U.S. Dist. LEXIS 53655, 2011 WL 1899238, at *2 ("Because the only issue of fact regarding Defendant Adey's role as an attacker is to determine which of Mr. Barnett's conflicting versions of fact is correct, there is not a genuine dispute sufficient to survive summary judgment."); *see also S.P. v. City of Takoma Park*, 134 F.3d 260, 273 n. 12 (4th Cir. 1998) (affirming summary judgment and rejecting Plaintiffs' attempt to create a dispute of fact by disputing statements she had made to police officers).

Additionally, while defendants dispute that Mr. Anderson was kicked as Plaintiffs' claim, the record affirmatively demonstrates that Det. Vodarick—not Det. Boyd—is the officer Plaintiffs claim kicked Mr. Anderson.  Indeed, Det. Strohman testified that Det. Vodarick tapped Mr. Anderson with his foot, "as in like if I were to tap like this to say, 'Hey, are you okay.'"  *See* Det. Strohman Dep. at 83.

Accordingly, Det. Boyd is entitled to Summary Judgment on Plaintiffs' Section 1983 claims against him (Counts XXXIII and XXXV) to the extent the claims are based on alleged use of force occurring while Mr. Anderson was in custody.

**B.     Det. Boyd Is Entitled to Summary Judgment on Plaintiffs' Claims Under the Maryland Declaration of Rights.**

Det. Boyd is entitled to summary judgment on Plaintiffs' claims of excessive force under the Maryland Declaration of Rights for the same reasons he is entitled to summary judgment on

Plaintiffs' Section 1983 claims—he did not use any force during Det. Strohman's seizure of Mr. Anderson, and he did not kick Mr. Anderson while Mr. Anderson was in custody.  Maryland courts interpret Articles 24 and 26 of the Maryland Declaration of Rights as protecting the same rights as the Fourth Amendment and the Fourteenth Amendment's Due Process Clause.  *See Smith v. Bortner*, 998 A.2d 369, 375 (Md. App. 2010).  Claims under Article 26 are governed by an objective reasonableness standard analogous to the standard that governs claims of excessive force under the Fourth Amendment; and claims under on Article 24 are governed by a subjective intent standard analogous to the standard that governs claims of custodial excessive force under the Fourteenth Amendment's Due Process Clause.  *See Smith*, 998 A.2d at 378.

Accordingly, Det. Boyd is entitled to Summary Judgment on Plaintiffs' claims against him under the Maryland Declaration of Rights (Counts III, VII, XI, XV, XIX, XXIII, XVII, and XXXI).

        **C.**        **Det. Boyd Is Entitled to Summary Judgment on Plaintiffs' Battery Claims.**

Maryland courts define a battery as "an offensive, nonconsensual touching—the unlawful application of force to the person of another." *Kastenelenbogen v. Kastenelenbogen*, 775 A.2d 1249, 1255 n. 1 (Md. 2001).  Law enforcement officers, however, have a privilege to commit what would otherwise be considered a battery when seizing an individual, as long as the force used in not excessive.  *French v. Hines*, 957 A.2d 1000, 1037 (Md. App. 2008).  Here, Plaintiffs' battery claims are based on alleged excessive force during Det. Strohman's seizure of Mr. Anderson and while Mr. Anderson was in custody.  Therefore, as to Det. Boyd, Plaintiffs' battery claims fail as a matter of law for the same reasons their other claims fail—Det. Boyd did

not seize Mr. Anderson, and he did not kick Mr. Anderson; and there is no evidence from which a reasonable jury could conclude otherwise.

## V.     CONCLUSION

Plaintiffs have had sufficient opportunity to conduct discovery concerning their allegations against Det. Boyd, and the record already demonstrates Det. Boyd's entitlement to summary judgment on all of Plaintiffs' claims. First, Det. Strohman—not Det. Boyd—effectuated the take-down of Mr. Anderson. Thus, Det. Boyd is entitled to summary judgment on Plaintiffs' claims to the extent the claims are based on alleged excessive force during the seizure of Mr. Anderson. Second, Det. Boyd did not kick Mr. Anderson. Thus, Det. Boyd is entitled to summary judgment on Plaintiffs' claims to the extent the claims are based on alleged use of force while Mr. Anderson was in custody. Additionally, Det. Boyd is entitled to qualified immunity on Plaintiffs' Section 1983 claims because he did not commit any of the torts alleged by Plaintiffs.

Respectfully Submitted,

*/s/ Peter W. Sheehan, Jr.*
**Harry S. Johnson, Bar No.: M00618**
**Peter W. Sheehan, Jr., Bar No.: 29310**
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202-1636
(410) 347-8700
***Attorneys for Defendant Gregg Boyd***